UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY

IN RE:

JJPM, INC., successor in interest to
FARRIS, MCINTOSH & TREMPER, INC.

    Debtor                                        CASE NO. 14-50841-THF
                                                    CHAPTER 7

JJPM, INC., successor in interest to
FARRIS, MCINTOSH & TREMPER, INC.

    Plaintiff

vs.                                                               Adv. Proc. No. 15-05009

KEEN EXPLORATION, LLC

    Defendant

---

**AMENDED MEMORANDUM-OPINION**

---

      THIS ADVERSARY PROCEEDING comes before the Court on Plaintiff's Complaint to Determine the Validity of a Lien. Plaintiff seeks an Order from the Court concluding that Defendant's Statement of Claim of Lien was based upon a false oath, was untimely filed, and is therefore void. Defendant denies the allegations and requests the Complaint be dismissed. As discussed below, the Court concludes that the Claim of Lien was untimely filed and is void.

      This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding in accordance with 28 U.S.C. §§ 157(b)(2)(A) and (K).

### Undisputed Facts

      In April of 2014, Honeywell International ("Honeywell") contracted with Farris, McIntosh & Tremper, Inc. ("FMT") to build a wastewater treatment plant in Metropolis, IL. As the general contractor, FMT retained Keen Exploration, LLC ("Keen") as a subcontractor to make soil borings

and collect soil samples on the real estate owned by Honeywell. Keen began work on May 5, 2014, and two weeks later, on May 19, submitted an invoice to FMT for its work.

On December 5, 2014, JJPM, Inc., the successor in interest to FMT, filed a Chapter 7 bankruptcy petition. Not long after, on January 13, 2015, Keen recorded a subcontractor lien on the property pursuant to the Illinois Mechanics Lien Act ("the Act"), 770 Ill. Comp. Stat. 60/24 (2006). In its statement of claim for lien, Keen writes, "The last date of service on the contract was October 15, 2014." Two different invoices are attached to the statement, one dated May 19, 2014, and a second dated October 17, 2014. The two invoices are almost identical except the latter includes the item "Professional Geologist (review and edit logs and diagrams on 10/15 per FMT request)." According to Keen, it is this item that demonstrates Keen's last date of service as October 15. Ostensibly, by recording its notice on January 13, 2015, Keen manages to just slip within the Act's 90-day window for filing.

On March 13, 2015, Plaintiff initiated this adversary proceeding alleging that the Claim of Lien filed by Keen was based upon a false oath and that Keen's last date of service on the contract was not October 15, 2014, but May 12, 2014—almost 5 months earlier. Plaintiff insists that at no time did FMT request Keen perform any work on the Honeywell site after May 12, 2014, and that any assertion by Keen as to "Professional Geologist" services performed on October 15 are patently false. According to Plaintiff, Keen did not record its lien until 245 days after its last day of service—plainly outside the Act's required time period. Plaintiff contends that, as a result, the lien is void.

## Discussion

At issue is whether Defendant did in fact perform lineable work on October 15, 2014, and whether the claim of lien, recorded by Defendant on January 13, 2015, was timely filed. The lien in question arises under the statutes of Illinois, specifically the Mechanic's Lien Act, 770 Ill. Comp. Stat. 60 (2006), which aims to "protect those who in good faith furnish material or labor for construction of buildings or public improvements." *LaSalle Bank Nat. Ass'n v. Cypress Creek 1, LP*, 950 N.E.2d 1109, 1116 (Ill. 2011) (quoting *Lawn Manor Savings & Loan Ass'n v. Hukvari*, 397 N.E.2d 247 (Ill. App. Ct. 1979)). The Act "seeks to balance the rights and duties of subcontractors, materialmen, and owners alike." *Bricks, Inc. v. C & F Developers, Inc.*, 836 N.E.2d 743, 750 (Ill. App. Ct. 2005).

Section 24 of the Act requires a subcontractor seeking to establish and enforce a mechanic's lien to serve notice of his claim to the property owner within 90 days after completing contracted work on the property. 770 Ill. Comp. Stat. 60/24(a) (2006). It provides:

> Sub-contractors, or parties furnishing labor, materials, fixtures, apparatus, machinery, or services, may at any time after making his or her contract with the contractor, and shall within 90 days after the completion thereof, or, if extra or additional work or material is delivered thereafter, within 90 days after the date of completion of such extra or additional work or final delivery of such extra or additional material, cause a written notice of his or her claim and the amount due or to become due thereunder, to be sent by registered or certified mail, with return receipt requested, and delivery limited to addressee only, to or personally served on the owner of record or his agent or architect, or the superintendent having charge of the building or improvement and to the lending agency, if known;

The question of whether a lien exists is not a matter within the discretion of the Court. *Prior v. First Bank & Trust Co.*, 596 N.E.2d 891 (Ill. App. Ct. 1992). "Because the rights created are statutory and in derogation of common law, the technical and procedural requirements necessary for a party to invoke the protection of the Act must be strictly construed." *Westcon/Dillingham Microtunneling v. Walsh Const. Co. of Illinois*, 747 N.E.2d 410, 416 (Ill. App. Ct. 2001). However, "[o]nce a plaintiff has complied with the Act's requirements, it should be liberally construed to accomplish its remedial purpose." *N. Shore Cmty. Bank & Trust Co. v. Sheffield Wellington LLC*, 20 N.E.3d 104 (Ill. App. Ct. 2014).

At the trial in this adversary proceeding, held October 22, 2015, Plaintiff called Phillip McIntosh, President of FMT at the time of the Honeywell project. McIntosh testified that around April of 2014, FMT contracted with Keen to drill borings for a wastewater treatment plant on the Honeywell site. McIntosh stated that Keen was only able to drill the borings to a limited depth, and as a result, FMT hired another company, Chase Environmental Group, to complete the work. McIntosh testified that Keen's last date of work was May 12, 2014. Transcript of Hearing at 11.

Describing Keen's work, McIntosh explained, "They drilled the soil borings, conducted in-place testing of some of the samples, and … deliver[ed] the soil samples to our laboratory." *Id.* at 13–14. Counsel asked if Keen provided any written report along with the soil samples. The witness replied that Keen provided "handwritten reports in the field … and they [gave] that to us when they deliver[ed] the samples." *Id.* at 14. When asked if any other reports were provided, the witness replied, "No." *Id.*

3

Plaintiff's counsel asked McIntosh about the two different invoices sent by Keen to FMT. The witness testified that while FMT did receive the May invoice, as indicated by a stamp reading "received," it did not receive the October invoice, which had not been stamped "received." When asked whether anyone from FMT had requested additional edits or reviews of the logs on October 15, as indicated on the October invoice, McIntosh replied, "No." *Id.* at 16. When asked whether Damon Turner, lead engineer on the wastewater project, had requested work on October 15, McIntosh replied, "No." *Id.* McIntosh explained it would have been impossible for Turner to have received updated information from Keen in October of 2014 because, "at the time, Damon was licensed as an engineer in Kentucky [but he] did not yet have his license in Illinois. So it was very important that [McIntosh] see everything that came in regarding the [Honeywell] job …" *Id.*

Plaintiff next turned to the deposition of Damon Turner, taken August 18, 2015. There, Turner corroborated the testimony of McIntosh. When asked whether Keen performed work in connection with the Honeywell project after May of 2014, Turner replied, "Not that I'm aware of." Deposition Transcript at 21. When asked specifically about the October invoice, and whether he requested any services on October 15, Turner replied, "Not that I recall."  *Id.* at 26–27.

On its behalf, Defendant called Craig Toon, geologist and driller, and sole partner of Keen Exploration. In describing his work for FMT, Toon explained he was unable to complete the borings because "the drilling conditions weren't favorable to meet the project deadline." Hearing Transcript at 26. According to Toon, a week or so after abandoning the project, still in May of 2014, he received a call from Turner asking Toon to review the logs from the work he had completed. Toon testified he made a note to get back to Turner but got busy and forgot. *Id.* at 27.

According to Toon, it was not until October 15 that he finally remembered to contact Turner about the logs. *Id.* at 28. And according to Toon, it was this "work" of reviewing the logs and calling Turner that forms the basis for the January lien. *Id.* at 32. When asked about filing the lien in January, Toon replied:

> I filed a lien and the reason -- and follow the logic here -- I reviewed the boring logs and I provided Damon with the supplemental information regarding what the geologic material at 65 feet in one of the borings on October 15th, okay? Now, if you do the math -- I don't have a calendar in front of me -- but 87 days from October 15th is the date that I filed the lien. Why is it magically 87 days? Because I wanted to wait and see if I could collect any money on this, and after it appeared that there was no other alternative except to file a lien, I filed the lien with three days of leeway.
>
> *Id.* at 31.

4

"The basis for filing a lien under the Act is the performance of work or the furnishing of materials that constitute an improvement to the land." *First Bank of Roscoe v. Rinaldi*, 634 N.E.2d 1204, 1207 (Ill. Ct. App. 1994). "As a general rule, only that which is actually used, or incorporated into the building is lienable." *In re T. Brady Mech. Servs. Inc.*, 133 B.R. 441, 444 (Bankr. N.D. Ill. 1991) (quoting *Verplank Concrete & Supply v. Marsh*, 353 N.E.2d 27, 29 (Ill. App. Ct. 1976)). Whether a particular service or labor is important or required by contract does not, in itself, make the work lineable; instead, it is the nature of the work and its completion that matters. *In re T. Brady Mech. Servs. Inc.*, 133 B.R. at 445.

It is difficult to envision how the work alleged to have occurred on October 15, 2014, could serve to provide any improvements to the Honeywell land. Toon testified that on October 15, he reviewed the boring logs and provided Damon with information regarding the geological material. Clearly, the actual work of collecting soil, analyzing samples, and creating logs had been concluded in May, at the Honeywell site. The alleged October act of reading the log and conveying information over the telephone did not add anything new to the project.

Nor does the alleged work constitute a qualifying service under the Illinois Mechanics Act. The Act provides that "architects, structural engineers, professional engineers, land surveyors, and property managers" are entitled to a lien for *any service*. 770 Ill. Comp. Stat. 60/1 (West 1992) (emphasis added). Geologists are not so protected. *See First Bank of Roscoe*, 634 N.E.2d at 1209 ("When a statute lists the things to which it refers, there is an inference that all omissions should be understood as exclusions, despite the lack of any negative words of limitation."). The Illinois courts have explained that the listed professions are uniquely protected because the "lienability of these professionals' services and expenses is not limited to land on which a structure is located." *Id. See also Freeman v. Rinaker*, 56 N.E. 1055, 1056-57 (Ill. 1900) (mechanic's lien allowed for the services of an architect even though the building was never constructed). Unlike these professions, Keen's services could only be performed on the land and are clearly outside the statute's purpose.

After reviewing the testimony and the evidence presented, the Court finds the weight of the evidence favors Plaintiff. Both McIntosh and Damon testified that no work was requested of or performed by Keen following May of 2014. Additionally, neither McIntosh nor Damon received the October invoice that purports to demonstrate the October work. The Court simply does not find the testimony of Toon credible enough to overcome Plaintiff's very credible witnesses.

Furthermore, the Court would be hard-pressed to believe that the "work" performed on October 15 qualifies as the kind of service protected by the Act. As such, the Court finds Keen did not perform lineable work on October 15, 2014, and that the Claim of Lien filed in January is void.

In its complaint, Plaintiff requests the Court award the Debtor attorneys fees and costs incurred by this action, as well as punitive damages against Defendant. "In determining whether or not the allowance of punitive damages is appropriate in this case, we must consult state law principles." *In re Barnett*, 95 B.R. 477, 478 (Bankr. W.D. Ky. 1988). "Under Kentucky law, punitive damages are authorized only when the circumstances surrounding the tortious act indicate malice, willfulness or a reckless or wanton disregard for the rights of others." *Id*. (citing *Island Creek Coal Co. v. Rodgers*, 644 S.W.2d 339 (Ky. Ct. App.1983)). The Court finds the facts and circumstances surrounding this case do not warrant the awarding of attorneys fee or punitive damages.

## <u>Conclusion</u>

For the foregoing reasons, the Court finds Defendant did not perform lineable work on October 15, 2014. As a result, the Claim of Lien, recorded on January 13, 2015, is untimely filed and therefore void. The Court declines to award Plaintiff attorneys fees or punitive damages.

_Thomas H. Fulton_
Thomas H. Fulton
United States Bankruptcy Judge

Dated:  November 13, 2015